May it please the Court, I'm Stuart Berman on behalf of Bryan Puckett. We flipped the order. I'm going to go first. Mr. Little on behalf of Mr. Banyan will follow me. I'm going to reserve four minutes for rebuttal. Judge Kethledge, I think you've written in the past that when a party comes before this Court with nine grounds for reversing the district court, that usually means there are none. In this case, Mr. Puckett and Mr. Banyan have heeded that advice and they've raised just the one issue on which Judge Drager granted bail pending appeal. We submit that that one issue requires reversal of their convictions. Namely, that the government did not prove beyond a reasonable doubt that these defendants were guilty under either prong of the bank fraud statute as it existed in 2006 and 2007. Now, the government charged these defendants because of their roles in the submission of allegedly fraudulent mortgage applications. What's the limitations period? So it's ten years or something? The statute of limitations is ten years on bank fraud. Do you know what it is for wire fraud? Well, it depends, Your Honor. It depends on whether or not it's directed at a financial institution. Right, just regular old wire fraud. Regular old wire fraud is five years. All right. And were any of these communications, loan documents, were they sent by email at all? This is just for my own curiosity why we're here straining the language of this statute when regular old wire fraud usually does the job. Your Honor, I'm not sure that there's any record evidence as to whether or not these documents were submitted by wire or not. But the court has hit on a key point here, which is that, you know, the government simply missed the statute of limitations on what they could have proved regardless of the statuses. The indictment came down after the five years had run, right? It came down after. Barely made it for the bank fraud, right? Right. Your Honor, the loans were – the loan applications were submitted in 2006 and 2007. The FBI started its investigation in 2009. They had five years, which would have taken them up to 2011 or 2012, to bring wire fraud or mail fraud charges irrespective of whether the victim was a financial institution or not. They simply missed that deadline. And what's interesting here, Your Honor, is that the government knew exactly that because in 2011 they brought wire fraud charges against two of the cooperating witnesses in this case. Erica Watkins and Robert Adams, who testified for the government and who had participated in fraud that was directed at an entity that everybody agreed wasn't a financial institution. So the government knew what it had to do. But for whatever reasons, it let the statute of limitations, that five-year period run, and it didn't charge Mr. Puckett and Mr. Banyan until July 2, 2014, which is eight years after the 2006 loan applications, nearly seven years after the 2007 loan applications. What's your best case that you're relying upon? It's not a Sixth Circuit case, is it? Well, on the statute of limitations issue, Your Honor, or in general? In general, that that fails to state a crime. Well, Your Honor, the reason that this fails to state a crime is the best cases are the Bennett case out of the Ninth Circuit and the Bouchard case out of the Second Circuit. And the fundamental fact here is that the banks were FDIC insured, but they did their mortgage lending through uninsured subsidiaries, Fifth Third and SunTrust. And under the bank fraud statute, as it existed in 2006-2007, the banks were covered by the statute. The uninsured subsidiaries were not. Your clients had no communications with the financial institutions, the insured banks, correct? Correct. No dealings with them at all? None. No dealings with the mortgage companies? Well, the government alleges that my client, Mr. Puckett, long after the loan applications, signed certain checks that were made out to SunTrust Bank as partial payment on these loans. But that's – as the court knows, the crime of bank fraud is executed at the time that the loan application is submitted. The indictment here charged – Right. It's not part of the alleged fraud, I guess. Right. So there wasn't any 1344-1 because there was no evidence that anyone involved in the process of submitting the applications, including these defendants, had any intent to defraud the FDIC insured banks. The applications, the government that submitted those, some of the exhibits in this case, went to the uninsured loan subsidiaries. And there's no proof under Section 1344-2, which was Judge Campbell's basis for denying the judgment of acquittal, because the government simply presented no evidence that the funds that the borrowers obtained from their applications to the uninsured subsidiaries came from the banks, that they were in any way owned by or under the custody or control of the banks. Nobody testified to that at all. No. The government presented no evidence that either bank funded either of these loans. The government presented no evidence that either bank had a line of credit to its subsidiary to fund in a more general sense. Right. So there's no record evidence specific to these banks that showed that these parents had some unusual immediate degree of control over the operations of the mortgage companies. That's absolutely correct. And, in fact, Your Honor, the SunTrust presented one witness who was dual-headed, who testified as a representative of the mortgage company and the bank. If anybody could have testified to that kind of connection, he could have, Mr. Switzer, and he testified to no such thing. You talked about the Second Circuit and the Ninth Circuit. Right. Talk about the First, Fourth, and Tenth. Well, Your Honor, in those cases, the First Circuit case in Walsh, the Fourth Circuit case, which I think was later vacated, the Tenth Circuit opinion in Irvin, there's a fundamental difference there, because in every single one of those cases, the government presented some kind of evidence that there was a funding connection between the parent and shared bank and the mortgage lender. And, in fact, that's the road map that the government could have followed here in order to secure its conviction. In fact, not only was that road map clear from the cases, but the government counsel knew it because Mr. Patrick, the lead prosecutor in his case, said in his opening statement that the lenders chiefly being the subsidiaries, SunTrust, and Fifth Third Bank, wholly owned subsidiaries that got their funding for the loans from these banks. That's at page ID 4371. And the fact is the evidence that they presented did not bear out the representation that they made in the opening statement. Real quick, the government wants us to throw out the corporate form here because it's a criminal case. What's your response to that? I cut my teeth decades ago prosecuting criminal antitrust cases in which most of the time there's a corporate defendant. We've pointed out in our reply brief cases from this court going back to the Carter and Continental banking cases back in the early 60s, the government prosecutes corporations routinely, and corporation law is a part of any of those prosecutions. In that Carter case back from the early 60s, this court is citing the Fletcher Encyclopedia of Corporation in order to apply appropriate principles in a criminal case. So we submit that those principles of corporation law apply with full force in a criminal case. Very well. Thank you, Your Honor. We'll hear from Mr. Berman. Is that right? I was Mr. Berman. Yeah, I'm getting it mixed up. Mr. Little, on behalf of Mr. Bain, good morning. May it please the court. I'd also like to reserve four minutes of my time for rebuttal. Okay. I'll start with some of the adverse cases that Judge Oliver brought up, but also this issue about corporate form. If you actually look at the government's brief and the way they argue this, they say, well, gosh, you know, the corporate form is not meant to protect fraud, and it's a truly disingenuous argument because what they're citing to are the cases that talk about when a corporation commits fraud through its subsidiaries, it's not protected by that form. There's no case, this court nor any other circuit, who has ever sort of wholly abandoned in a reasoned opinion the corporate form, and we certainly don't think there's a reason for this court to do so. Did anybody testify about the fact that the parent bank owned one of these subsidiaries? There was a single stipulation that the parties agreed to that said that the mortgage company was a wholly owned subsidiary of either SunTrust Mortgage or Fifth Third Bank. That was the only testimony as to the relationship as a corporate matter. There was no testimony about overlapping board members. There was no testimony about overlapping officers. There was no testimony about policies and procedures. So we know nothing about the way that SunTrust Mortgage did its business or funded its loans. When they made their payments to the mortgage company, did they make it straight to the mortgage company or did they make it to the bank? Well, there's only testimony about, I think, one particular or two particular loans, the payments, because most of these loans were not obtained by my client or the co-defendant. They were obtained by third parties. But at one point there was a loan that was obtained by Mr. Puckett, and a year or two after the loan was obtained, he wrote a check to SunTrust Bank. It's unclear why the check was written. It's unclear why it was listed as SunTrust Bank as opposed to SunTrust Mortgage. We don't know who held the mortgage at that point, and so the record is very unclear as to how that happened. But that's the only connection where there's a word SunTrust Bank with any of these mortgage loans, again, far after the application. Oliver, I do want to point to, they're going to likely talk about a D.C. Circuit case as well, U.S. v. Hall, and the Fifth Circuit case, U.S. v. Hall. Is that the Judge Sentel opinion? It is. 2010? It is. And I think one thing that's important about both those cases, really every case the government cites, is either pre-Lofgren or is post-Lofgren and doesn't distinguish between subsections one and two. And that's important because if you look at the case law, which the reason Lofgren was granted cert and they discussed these issues is because the circuits had really sort of mushed together this issue of intent to defraud a financial institution and the specific sort of monies that were obtained. And they put one and two together. And Judge Sentel, obviously a fantastic judge, but what you'll look at that opinion is there's no real, it's a throwaway paragraph. He said it, I mean I have a world of respect for him, but the opinion said it caused a loss to the mortgage company, which is wholly owned, and consequently it caused a loss to them too, ergo guilt. And it completely ignores sort of I think the really reasoned analysis of Bennett, which explains why we have to have some formality. Bennett is looking at what the statute actually says. Exactly. And that's what we'd ask this court to do as well. To look at what the statute says before you convict somebody. And I think when it goes to the issue of flow through profits, just to talk about that briefly, one of the things that's clear, we don't have any information as to when that happens, how close in time. We don't know, and it's quite possible given the way that the industry worked, that SunTrust Mortgage was obtaining the funds for its mortgages from third parties, hedge funds, folks who wanted to invest in this. So there's no record evidence that the money that comes in to fund the operations actually came from the parent bank. And there's lots of reasons to believe that it wouldn't happen. Nor is it actually in this perverse world of mortgage fraud necessarily true that a loss on a mortgage would result in a loss in your profits. Because banks were buying credit default swaps. They were actually betting against some of these loans to fail. And so we know nothing about that. What we have is a black box where they've told us profits and losses flow, and that should be enough. And that's simply not enough under the statute. Unless you have further questions, I'm out. Thank you. Have your rebuttal. We'll hear from the government. May it please the court, Sangeeta Rao on behalf of the United States. Can I ask you, just at the inception, and I don't mean to interrupt, but can you tell us whether there is any record evidence about the effect on the parent company other than that it's a subsidiary that's involved? Was there information before the court beyond the fact that this was a subsidiary of an FDIC bank? Yes, Your Honor. There is evidence. There's six aspects of evidence. And what was it that you think was important? Right. So beyond the wholly owned subsidiary, the second piece of evidence was the testimony that the profits and losses from the mortgage company flowed directly to the bank. Now the defendants characterized that evidence as a connection between the banks. So what does that go towards? It goes towards the custody and control prong, custody or control prong. So the control means the power or authority to guide or manage. Money in this case. Yes. That's what the statute says, control monies, funds. And property. As opposed to the entity. Which the entity owns the property, and the parent corporation, by wholly owning the subsidiary, also owns. But really what I'd like to talk about is the custody or control prong, because I think that the evidence is stronger on that. And that requires authority or power to guide or manage, and the care or control of the thing. The thing being the money. The thing being the money. Not the entity. Yes. But it flows through. We think it's a fair inference that a parent that wholly controls a subsidiary by wholly owning it, has the assets and the funds of the subsidiary under its... You didn't put on any evidence to that effect. You're making, you're convicting people based on an inference that you, since you own an entity, you're controlling the money in the entity. But you didn't put on any evidence. There is more, Your Honor. And there are five other aspects. So one is the testimony about the profits and the losses flowing directly. And taking all inferences in favor of the jury verdict, that doesn't just mean a net effect at the end of the year in terms of taxes and accounting. It means profits and losses flow directly to... Who testified about that? That was William Bruce from Fifth Third Bank. The page site is... Sorry, Your Honor, I don't seem to have... Elizabeth Godwin said something sort of the same. Elizabeth Godwin said something almost the same, which is that if I make money, the bank makes money. But there's more. There's four other aspects of evidence. Let's not race through this. On that point, the question is did the actual financial institution somehow control the money of the mortgage company? Let's say that losses of the mortgage company indeed pass through to the bank. That just shows a causal relationship to the bank's financial bottom line. It doesn't show anything about the bank controlling the mortgage company's money. We think that there's a partial inference there. That's what the D.C. Circuit got wrong. That if profits and losses are flowing directly to the bank, that that means that the monies are actually under the control. It helps. It's not about causation. It's not about control. Well, as an inference, we think that that shows the close connection between the two entities and that that close connection can imply custody and control. But there is more. This all sounds vague. It's inferences and connections, and it just doesn't seem to really have that much application to what the statute actually says here. So another key piece of evidence, Your Honor, is the fact that Defendant Puckett wrote the checks to SunTrust Bank, and it's much more than just a couple checks. So are these checks making mortgage payments after the fraud? Yes. There are more than 30 of those checks. Why does this matter if it's after the fraud and somebody's just paying the mortgage? Well, they span the life of the fraud. If you look, for example, at government exhibits 3P and 3Q, which are for the Skene loan, which is charged in Count 3, the Skene loan closed in October 2006. The first of these over 30 checks starts January 2, 2007, and it has the notation December slash January. So given that it takes a while for the mortgage to go through, that indicates it's the first check. So by the beginning of the mortgage payoff, Defendant Puckett was indicating that he knew that it was SunTrust Bank who these funds came from. He was paying SunTrust Bank, not SunTrust Mortgage, and there are more than 30 checks that show that. Also, the government exhibit 2L shows that one of the checks was returned for insufficient funds. It was not returned because it was an incorrect payee. It was returned for insufficient funds, showing once again that SunTrust Bank was the person being paid for these loans. That, again, permits an inference with all inferences drawn in favor of the government that the bank was in control of the funds. That's a fair point. There is more. Okay, but let me talk about your points before we run off to the next one. I understand your point there, but I don't know if your experience is like mine, but when I sign a mortgage, usually six months later I get a letter from somebody saying it's been assigned and now you're going to be paying these people over here. The government had an obligation to prove beyond a reasonable doubt that these defendants obtained monies under the custody or control of financial institutions, namely the banks. Beyond a reasonable doubt. Sure, we view it in the light most favorable, but beyond a reasonable doubt. So it's a governance contention that because somebody writes a check to Entity A after the fraud, that shows that they were actually obtaining money from Entity A, even where the loan agreement and the disbursement was from a different entity? Well, it's important that the court doesn't dissect the evidence and consider it one at a time. Right. The standard would be that the court looks at all the evidence. So when you take all the inferences from the evidence, yes, we do think it proves it beyond a reasonable doubt. I'd like to point the court to another document, which is Government Exhibit 3F. It's for the Skene loan, and it's an underwriting approval commitment. The heading of that document says SunTrust. I don't remember this stuff in the government's brief. Was it in the brief? This particular document was not mentioned in the government's brief. I mean, counsel comes here, and frankly, they're not presumably even prepared to talk about things the government didn't argue. Well, the question for this court is, in a search of the record, whether there is sufficient evidence of the connection in the record. Was this 2L business about the checks? Was that in the government's brief? The 2X, 3P, and 3Q, I believe, were, and they were definitely cited in the defendant's reply brief when they said that there were only three checks. I don't believe that 2L was mentioned in that connection. I think it would be a good idea to stick to what's in the government's brief, frankly. Otherwise, we're going to have to give them a chance to respond in writing to what you're arguing now. Yes, Your Honor. I mean, argue what you want, but let us know when you're going outside the brief. So that point would be outside the brief. And just to finish that point, if you look at that government exhibit, it's titled Underwriting Approval Commitment. Again, showing that this is an entity that was involved in the underwriting. And the header of it says SunTrust. It doesn't say SunTrust Mortgage. It's in the same font and appearance as SunTrust Bank uses. So if you look at other exhibits in the record that are coming from SunTrust Bank, like bank statements and just other things that are from SunTrust Bank, it looks the same. But that's another inference, that the two entities are the same. They have the same name, which is what Rabufo, in the Eleventh Circuit's opinion, and Rabufo also relied on, in showing that there's a connection between the entities and such a close parent-subsidiary connection. It's not an absent parent. It's so close because of these other aspects. Does this approval, does it show the parent corporation, the parent bank, has signed it off, or is it just the mortgage company? I haven't looked at it. Right. It has, on the top, SunTrust. And it doesn't say SunTrust Mortgage, but SunTrust in the same appearance and font as SunTrust Bank uses on its bank statements, on its checks. So we just think that that's showing, once again, that there's a connection. But there is more. There's evidence of an overlap of employees. If the government's reduced to arguing about similar fonts here as a means to disregard the corporate form, I mean, that says a lot about the government's case. Your Honor, it's not a disregard of the corporate form. We're simply looking at the fraud statute and taking its plain terms. Its plain terms talk about the custody and control. If you look at the cases the defendant relies on for the corporate form, let's look at Dole, for example, the Supreme Court case. In that case, the question was whether – it was a question under the Foreign Sovereign Immunities Act. And the question was whether a subsidiary was entitled to sovereign immunity when Israel owned a majority of shares in a parent corporation that was separated by many tiers from the subsidiary. The Supreme Court, in analyzing whether the subsidiary should come under – it's Dole. It's cited in the defendant's brief. It's the main case that they cite when they're talking about the corporate form. So the Supreme Court looked at the text of the statute, which talked about shares of a corporation, in defining whether an instrumentality would be granted the sovereign immunity of the country. It then said that because the statute itself recognized the corporate form, the corporate form was important. And then it went on to talk about the principles. Something very similar is true about Carter, which is the Pilsner brewing case from the Sixth Circuit. Once again, this court looked at the statute. And there the question was whether, for a labor relations law, the parent was the employer of a particular defendant. And just under the plain terms of the statute this court held, well, no, the parent wasn't the employer. Here, it's a general fraud statute. It's not a statute that's looking at the corporate form in particular like the statute in Dole was. It's a general fraud statute. It's meant to be interpreted broadly. It's meant to protect the funds of the bank. And the question is whether, just under the plain terms, one would understand that a wholly owned subsidiary, with all these other connections showing that it's not an absent parent, does have custody or control over the subsidiary. And we think that that is enough in this case. Let me take you back to, just very briefly, the situation where there were 30 checks or whatever over the life of a loan. Your argument there is your argument basically that this was part of the scheme to defraud. That's when they entered into an agreement to defraud, that the bank was intricately tied up in that because the funds were going to be obtained from or paid to the FDIC insured entity. Yes, Your Honor. And I just want to make clear that it's not just from one loan, the number 30. It's from at least loans behind counts 2 and 3 where I get the number of over 30 checks. Did it involve both defendants or just one? So those are checks written by Defendant Puckett. But we think that it shows that that's, in fact, what the relationship was. Also, Defendant Banyon had actually worked at SunTrust Mortgage and was a mortgage officer for many years. Like Puckett, he's very experienced in the industry. He would know that connection, too. Another piece of evidence is that William Bruce, who worked for Fifth Third, when he testified, he referred to the banks and the mortgage company interchangeably. And he said he worked for the Wholesale Mortgage Division of Fifth Third Bank. So he didn't characterize it, even though there's other evidence in the record that has him working for the Fifth Third Mortgage Company. He didn't think of the subsidiary as a separate entity. He thought of it as a division of the bank. And a number of the other witnesses, that was William Bruce, and a number of the other witnesses. What was his role again? He was the underwriting manager for Fifth Third Bank, and he was involved in the Hoffman loan. That's the subject of count 6. If you look at all of the testimony from the bank representatives, you can see that they really make not a distinction between the bank and the mortgage company. They're asked, for example, were those records from the bank? And they say yes. And then they're asked, well, were those records actually from the mortgage company? They say yes. Okay. So basically the government's trying to make a circumstantial case, it sounds to me, that Fifth Third Bank actually controlled the funds of the mortgage company. Is that fair? Yes. Why didn't the government ask these witnesses directly about the bank's putative control of the mortgage company funds? There's a filing from the government in the district court that mentions that the district court had put some restrictions on some of the testimony that it wasn't expecting. It had considered, I think it was Thomas Switzer's testimony to be expert testimony. And so I think that the implication is the government was, in fact, scrambling at the end. I don't understand why something that would pertain to expert testimony. I mean, this is a factual question. Right. But it would have been – this is – As it comes to us, it's remarkable that you had all these folks at your disposal, and here we are talking about font sizes and, you know, somebody using the word bank in a deposition. So, Your Honor, the government in other cases does put on other evidence, but the question is not what the government could have done in a best case scenario, but whether we did the minimum necessary to meet the sufficiency standard. And we think that if you look at the entire record, as this court should, that we have. So you're saying the bank controlled the mortgage company's money? Yes. Or it was on the – all those taxes were in the custody. How did – let's get a little more specific. What kind of control are we talking about? How did that manifest? Did the bank approve these kinds of loans that were being made? So we don't have enough evidence in the record to say specifically, but we think that in general that, yes, the bank could have exercised any of those specific rights and authority because they had the general authority. How about this? In the record, is there any example of an instance in which the bank, in fact, exercised control? The bank did something controlling money for a mortgage company. So I think that the checks are probably the best example of that. Okay. That's something there – that's something that the defendants did, Mr. Puckett did. Is there an example of something the banks did? A specific example to control the money in a mortgage. Your Honor, I think that by depositing the checks – We approved this loan, whatever. I think that by depositing the checks, by taking the checks, that actually is – What did they do with the funds for the checks after the banks, after they received it? We don't have any information on that. Maybe they sent it to the mortgage company because it got sent to the wrong place, for all we know, right? That would not be a fair inference, taking all inferences in favor of the government. Believe me, I'm aware of the standard. Setting aside the checks business, again, any specific instance, anywhere in the record, of any of these banks actually exercising control over a dollar from the mortgage companies. I think that this Court could find the inferences that the banks did all of it because they were basically considered the same entity. The answer is no. The government has no specific instance it can point to that shows that is an example of the banks exercising control over the mortgage companies. Fair? Except for the GX3F. I'm sorry, Government Exhibit 3F, which is that underwriting approval commitment, which I agree is – it just says SunTrust. It has the font. It looks like SunTrust. I think that you have to put all the inferences together to get us to the point where you would find that the parent was integrally involved with the subsidiary. When you put those relationship evidence together with just the simple fact that it was a wholly owned subsidiary and that meant that it had guardianship and authority to manage the entire subsidiary, that that's sufficient. Now, the government concedes that the mortgage companies were not financial institutions within the meaning of the statute, correct? Correct, not by themselves. Okay. Not at that time. Right, at that time, pre-2009. So have you abandoned the 1344.1 argument that – I mean, I thought the government was arguing that because they're wholly owned, these mortgage companies are, in fact, financial institutions. Well, I think I misunderstood Your Honor's question. No, we're not abandoning that. We don't think that the court needs to reach the subsection 1 because of that. I'm just trying to understand what we have to deal with in an opinion. So are you actually arguing that the mortgage companies are financial institutions within the definition of section 20, subsection 1? So it's more nuanced than that, Your Honor. It's not that they are independently a financial institution. It's the fact that their relationship with the banks, the banks are, and the relationship was so close that they should be considered. It should be found that there was a scheme to defraud a financial institution because – Who's the financial institution that was frauded? The banks. The banks through the mortgage companies because of these connections. But we do agree it was the banks. If I may, fraud is a term of art basically in the law. It requires a misrepresentation upon which the victim, the defrauded party, relies. So that theory would seem to me to require a determination that the bank relied. The bank, in fact, relied upon some misrepresentation in the loan documents that were presented to the mortgage companies. Is that fair? Is Your Honor's question about subsection 1 specific? Yeah. Yeah. I mean, to say that the bank was defrauded, I mean, there are two ways you can go at this. Somehow you might try to argue that the mortgage company is a financial institution. I don't know how, but you could argue that. Or I think what you're saying is that actually the bank itself was defrauded by the misrepresentations that the defendants made. Is that what you're arguing? Yes. And in order to have proven that, you would have to show that the bank itself, in fact, relied upon those misrepresentations. Correct? Well, I think we would have to find that the scheme was such that the defendants Not affected by, fraud specific, relied upon the misrepresentations. Is that fair? In order to show fraud, you have to show that the victim relied upon the misrepresentations. Well, I don't think we have to show that the victim relied, but that there was a scheme that the defendant, you know, the intent of the scheme was. So I do think that that was proved here, that because of the close connection, Puckett, for example, writing that first mortgage check to SunTrust Bank, he knew that it was the bank that was You're asking us to disregard the corporate form, to say that the bank was defrauded because the mortgage company was defrauded. We don't believe so, Your Honor. We think that because of all the connections we've shown, that under the plain terms of the statute, that Plain terms of the statute. It's not disregarding the I mean, that's remarkable because the government's brief doesn't even analyze the terms of the statute. It starts, I mean, it's like an homage to the 1970s, respectfully. It starts with legislative history. It goes on to statutory purpose, and then it talks about case law. It never, to your credit, you're talking about the word control. The government's actual brief doesn't talk about the language of the statute. We think that this court should focus on the language of the statute at this point. All right, well, we're in agreement on that. And look at the corporate form, and also just take into account the principle that the corporate form is ignored when it doesn't actually meet the public convenience or for questions of fraud. So if there's a very formal reason that this court believes that there's a distinction between the parent and the subsidiary Well, the formal reason is Congress didn't include it. That's why they had to add it later. That's not a technicality. But Subsection 2 is actually much broader. And Subsection 2 is focused on the custodian of property of the bank. And we do think that a wholly owned subsidiary is a custodian, is in control of bank property. And this court in Everett, for example, held that it was sufficient under 1344 if the defendant, in the course of committing fraud on someone, causes a federally insured bank to transfer funds under its possession and control. And we think that that's what happened here. All right. We understand your argument. Thank you. Thank you, Your Honors. Your Honor, let me briefly respond to a few of the government's points. The language of the statute matters. And 18 U.S.C. Section 20, and specifically Subparagraph 1, says that a financial institution means an insured depository institution as defined by the Federal Deposit Insurance Act. It doesn't say an insured depository institution and its subsidiaries and its affiliates and an entity that is so close. The language matters. Similarly, in Section 1344-2 Let me ask you this question. Yes, Your Honor. Is there some evidence in this case, based on those checks, that the loans were funded by the FDIC bank? No. There is no evidence whatsoever in this case that the loans were funded by the FDIC insured bank. And the government presented four witnesses, two from each bank. Neither one of them said anything of the sort. And, in fact, Mr. Bruce, the witness that was cited in the government's argument, said no more than that any losses incurred by the Fifth Third Mortgage Company's losses or profits flow directly up through the bank to the bank corporation. That's it. Then just one more question in regard to that. Do you have any understanding, just generally, as to why checks would be paid to FDIC, the insured bank, as opposed to the mortgage entity or some other entity? Your Honor, the record is silent here as to why. First of all, it's silent as to who made out those checks. The record is silent as to why Mr. Puckett signed them under the circumstances under which he signed them. But the key thing here is chronology, because the crimes occurred at the time the loan applications were submitted in 2006 and 2007, and that's when funds had to have been obtained from the entity that was under the custody and control or owned by the FDIC insured bank. And there's nothing about Mr. Puckett writing checks months or even years later that can go back and establish that that crime was committed at that time. The mortgage application in Count 2 was submitted on January 25, 2006. Mr. Puckett wrote a check, Exhibit 2K, in April of 2007, 14 months later. It doesn't do anything to establish that a crime was committed in February of 2006. Similarly, in Count 3, the application was in October of 2006. It doesn't by itself, and you're saying you don't know any reason to tie it up. You know, conceivably the money could have been advanced by the bank, but you're saying the evidence doesn't support that. Your Honor, that would be the kind of speculation that the Ninth Circuit said we can't engage in in the Bennett case. They're presented with a very similar sort of argument that they should speculate as to a degree of ownership or control based on a number of facts that, like the facts in this case, simply don't support the kind of inference. We're really talking about the distinction between a fair inference and mere speculation. And I think any conclusion based on checks written long after the crime was allegedly committed amounts to nothing more than mere speculation. At the time that the transaction was involved, was there evidence of where the money came from and where it went? No, that's... To the seller or from whom? The loan applications were submitted to the uninsured subsidiaries, and that's where the funding came from. There was no evidence whatsoever in this case that any of the funding came from the parent bank. And, again, Your Honor, that's what distinguishes this case from that whole long line of cases, the Ervin case in the Tenth Circuit, the Chandler case in the Eighth Circuit, the Walsh case in the First Circuit, even the Rabufo case more recently in the Eleventh Circuit, and there are a couple of others. In each of those cases, the government was able to show, yes, there's a line of credit from the parent bank to the subsidiary. There was a flow of funds from the parent bank to the subsidiary. And they knew exactly that that was what was required because that's what the prosecutor said in the opening statement. But then they didn't prove it. They didn't put in a single shred of evidence to prove that any funds moved from the parent to the subsidiary. The last point I want to make, Your Honor, is two final brief points. One is that we're asking the Court to rely on Bouchard and Bennett as opposed to the Hall case with all due respect to Judge Sentel. And I would point out that what Bennett and Bouchard had to say is completely consistent with what this Court had to say in the Everett case back in 2001, where it noted that the purpose of Section 1344 is to protect the federal government's interest as an insurer of financial institutions. And there is nothing in this case that in any way affected the federal government's interest as an insurer of the FDIC-insured bank. Finally, let me note that the government at the end essentially says that ownership is sufficient to – that the mere ownership by the parent of the subsidiary is sufficient to bring this case within the bank fraud statute. And as we pointed out in our brief – That was more nuanced than that. Well, but that's not what I heard today. Yes, you did say that. Let me note, though, Your Honor, that to the extent that the government's theory – to the extent that the government's theory says that any entity owned by an FDIC-insured bank is within the scope of the bank fraud statute, that sweeps in all kinds of non-bank entities that we noted in our brief at page 31, where we noted some of the insurance company and the tax service and some of the other non-banking entities that SunTrust owns. Not just that SunTrust's parent company owns, but in the SEC filing by the SunTrust – Wholly owned subsidiaries. Right. Wholly owned subsidiaries – You're going to have to wrap this up. Right. Wholly owned subsidiaries of the FDIC-insured bank, not of the parent holding company. They have wholly owned subsidiaries that are tax services, that are reinsurance companies, that are all sorts of other things. And we submit that any interpretation of the statute that brings those within the scope of the bank fraud statute is way beyond what the Supreme Court said in Loughran, where it said that the purpose of Section 1344 is not to federalize fraud, so to have nothing to do with the banking. Thank you, Your Honor. Thank you, Mr. Berman. We'll hear from Mr. Little. Thank you, Your Honors. I was trial counsel, so I want to just address a few sort of record issues. Judge Seiler, the question of when the funds were obtained – we have in the record these HUD 1s that show when the loans were dispersed. It would be very easy to look at the dates of when that happened. And there's nothing, though, that follows where the money comes from other than the mortgage companies, when the mortgage is dispersed to the buyer – excuse me, to the seller. That's true in all the instances. That's correct. Mortgage companies. Mortgage company sends the money to the seller. That's how it's obtained. Do you have any idea of why they were making checks to one of the FDIC banks? I don't. My client has nothing to do with those checks. I can speculate that sometimes you write quickly, and who knows where it was even sent at this point. The second – this was not in the government's brief, so I didn't have a chance to address it – this idea that somehow the government was precluded from putting forth this evidence. The reference, I think, that the government's attorney talks about, there were some pretrial motions where we were trying to get into the banks and specifically the mortgage companies' knowledge of misbehavior, of these sorts of practices, that they knew and expected applications to have basically stated income loans. There was nothing at all precluding them from answering the sort of questions that this court has talked about. So when the government talks about things like close connection or affecting the bank, none of those things are the words in the statute. It's obtaining money that's in the control, capacity, or ownership of the FDIC-insured bank. That's not here. They missed the statute on regular wire fraud. They thought this was close enough. They've tried to make it close enough the entire time, and we ask that you not allow them. Thank you. Is there anything that – and I'm not attributing any bad intent to the government at all – but is there anything that the government argued here outside of the government's brief that you feel you've not had a chance to be prepared to respond to? No. But I will say that I think when the government starts making representations to this court about the ways in which this mortgage company – the bank controlled the mortgage company that are completely outside of the record and I think are probably her best attempt to construct a theory, the problem is we don't know if those things are true or not. And quite likely they may be untrue. And if they're untrue, we may be here if this conviction is affirmed on some basis that they've convinced this court that that's how the bank actually asserted control. We're here on 2255 when it turns out we've investigated and said, no, they had nothing to do with the application approval of these loans. So it's a very dangerous game to start playing. All right. Thank you all for your arguments. The case will be submitted. Clerk may call.